UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLIFFORD RANDALL, JR.,

                              Plaintiff,

                    -against-

EITAN ITAH; 310 W 115 STREET, LLC; DOE
CORPORATION; DOE OFFICER; DOE OFFICER 1;
DOE ATTORNEY 1; DOE ATTORNEY 2; JEFFREY
STAIL, ESQ. (DOE ATTORNEY 3); DOE LAW FIRM;
PHYLLIS SAXE, JUDGE; CITY OF NEW YORK;
NEW YORK CITY POLICE DEPARTMENT;
DIVISION OF HOUSING COMMUNITY RENEWAL;
HOUSING PRESERVATION DEVELOPMENT;
COMMISSIONER VICKI BEEN,

                              Defendants.

18-CV-0524 (CM)

ORDER OF DISMISSAL

COLLEEN McMAHON, Chief United States District Judge:

    Plaintiff, appearing *pro se*, brings this action under 42 U.S.C. §§ 1981, 1982, 1983, 1985,

1986, and 1987, as well as 18 U.S.C. §§ 241, 242, 245, and 249. Plaintiff also asserts claims

under New York State law. Plaintiff's claims arise from his eviction from the property at 310

West 115th Street, New York, New York ("the property" or "the building"). He seeks monetary

damages, declaratory relief, and temporary and permanent injunctive relief. (ECF No. 2 at 39-40;

ECF No. 3.)

    Plaintiff specifically asks this Court to issue a temporary restraining order and a

preliminary injunction enjoining the defendants from "selling, exchanging, renting, leasing,

subleasing, altering, demolishing, transferring, conveying, pledging, alienating or otherwise

disposing of," or encumbering the property. (ECF No. 3.) He also asks the Court to declare that

he is the owner of the property by adverse possession. (ECF No. 2 at 39.) He further asks the

Court to order that title to the property be transferred to him. (*Id.*)

By order dated June 13, 2018, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*. For the reasons discussed below, the Court dismisses this action, but grants Plaintiff leave to replead his claims under 42 U.S.C. §§ 1981 and 1982.

## STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

## BACKGROUND

Plaintiff alleges that in or about June 2003, before the property had been sold to a person named Terry Grey, William McDowell, the building's "caretaker," offered Plaintiff an apartment in the building to rent. Before Plaintiff accepted that offer, however, the property was sold to Grey. Thereafter, McDowell told Plaintiff that Grey "showed up only once and declared that he was purchasing the property, that he did not need a caretaker, expected the property to be delivered vacant, and [that] he wanted [all tenants] to vacate the premises . . . ." (ECF No. 2, ¶ 23.) He also told Plaintiff that once Grey had purchased the property, he had abandoned it "because he never came back to the building to collect rent or do anything." (*Id.*) Plaintiff then

2

came to an agreement with McDowell: in exchange for Plaintiff's assumption of McDowell's "caretaker" duties, and for an additional sum of money, McDowell allowed Plaintiff to live in one of the building's apartments. Plaintiff thereafter moved into that apartment.

In or about April 2005, two men knocked on Plaintiff's door; they had been sent by Grey. They wanted to know "who the plaintiff was, how did he get into the apartment, and made it clear that [he] needed to vacate the apartment or he would be fu_ked-up [sic]." (*Id.* ¶ 26.) They then called Grey on a telephone and allowed Plaintiff to speak to him; Grey told Plaintiff that he had not given him permission to live in the apartment. Plaintiff tried to explain about his agreement with McDowell; he asserted that Grey had abandoned the property and that he wanted to be compensated for the work he had put into maintaining it. Grey threatened him with bodily harm if he did not vacate the property; one of the men there then punched Plaintiff in the face. Plaintiff then called the police, but the two men fled. Grey never sent anyone to the property after that incident.

In July 2005, another tenant named Cobb received an eviction notice. Plaintiff accompanied him to the New York City Civil Court, Housing Part ("Housing Court"), where his eviction proceeding took place. Plaintiff alleges that the Housing Court "allowed [him] to make himself part of the case/proceeding and he submitted a lengthy affidavit into the record delineating the contours of Grey's abandonment [and] harassment . . . ." (*Id.* ¶ 29.) He also asserted to the court "that he was in adverse possession (obviously premature at the time) of the property, and had taken responsibility for maintaining the property." (*Id.*) The Housing Court "dismissed Grey's Holdover Petition and [Grey] never filed another Petition against any tenant." (*Id.* ¶ 30.) Grey later cut the property's electricity, heat, gas, and hot water, and allowed the

property to fall into disrepair and to be infested with rodents in an effort to get Plaintiff (and the other tenants) to vacate. But he never took any legal action to evict Plaintiff.

In April 2006, in exchange for another sum of money, McDowell agreed to vacate his apartment and allow Plaintiff to "extend[] his living space into McDowell's unit." (*Id.* ¶ 35.) Plaintiff thereafter maintained the property as his own, renting rooms to others.

Plaintiff alleges that on or about May 24, 2014, Grey transferred legal ownership of the property to Defendant Eitan Itah and his business, Defendant 310 W 115 Street, LLC. On June 23, 2014, Plaintiff found a notice stating that Itah, 310 W 115 Street, LLC, and Defendant "Doe Corporation" (the "parent company" of 310 W 115 Street, LLC) were the new owners of the property. It also instructed tenants to forward all rent in arrears to "Doe Corporation" or Defendant "Doe Attorney 1." The next day, Plaintiff called "Doe Attorney 1" and insisted that he was "the rightful owner of the property because he had lived at the property for more than eleven years; his adverse possession had ripened into ownership." (*Id.* ¶ 41.)

On June 24, 2014, one of Plaintiff's tenants informed him that Itah had come to the building and told her that he was the owner of the property "and that he was cleaning house and was going to start with" Plaintiff. (*Id.* ¶ 43.) Plaintiff alleges that either Itah or another tenant stole some of his personal property on that date. Plaintiff went to the New York Police Department's ("NYPD") 23rd Precinct and reported the incident, but a police sergeant refused to make out a report about it because he stated that it "was a landlord and tenant dispute . . . ." (*Id.*¶ 45.)

On July 17, 2014, while he was away, Plaintiff was informed that men were moving his furniture and other personal property into a moving truck. He learned that "the Itah Gang broke down [his] apartment door, changed the door[] and locks . . ., and were changing the locks on

4

most doors throughout the property (including the entrance door) . . . ." (*Id.* ¶ 47.) When he

returned that day, he could not enter his apartment. He learned that Itah's employees had

removed all of his personal property. He then called the police, but when the police did not

arrive, he went to the nearest police precinct and told a sergeant what happened. The sergeant

stated that there was nothing that he could do because it "appeared to be a landlord [and] tenant

dispute . . . ." (*Id.* ¶ 57.) But Plaintiff insisted that crimes had been committed. Plaintiff told the

sergeant that the police were treating him differently because he was an African-American man,

as opposed to a white person or a woman. The sergeant told him that it was out of his hands and

to take his dispute to Housing Court. The sergeant also informed Plaintiff that he had sent police

officers to the property and suggested that Plaintiff speak to those officers.

Plaintiff returned to the property and found police officers there, Defendants "Doe

Officer" and "Doe Officer 1." When he tried to speak to them, "Doe Officer 1 cut him off and

stated that the person he spoke with [at the property] explained that [P]laintiff was prohibited

from entering the premises . . . ." (*Id.* ¶ 60.) When Plaintiff tried to enter, "Doe Officer" stepped

in front of him and threatened him with arrest. "Doe Officer" told him that this situation was a

landlord and tenant issue and that he would have resolve the dispute in Housing Court. "Doe

Officer" refused Plaintiff's request to make out a criminal complaint about Itah, and asked

Plaintiff to step away from the property.

Plaintiff thereafter sought assistance from Defendants City of New York, its Department

of Housing, Preservation, and Development ("HPD"), and the New York State Division of

Housing and Community Renewal ("DHCR"), all to no avail. He alleges that Defendant Vicki

Been, the former HPD Commissioner, "caused [him] to become injured by failing to enforce

heat, hot water, discontinuance of gas [and] oil accounts, and other maintenance laws, and [she]

allowed title holders to harass [him], engage in wrongful eviction tactics [against him], and illegally evict [him]." (*Id.* at 12.) Plaintiff went to Itah's office, where Itah informed Plaintiff that he had discarded Plaintiff's personal property into the garbage and threatened Plaintiff with arrest if Plaintiff ever returned to the building.

Plaintiff pursued his dispute against Itah in Housing Court. It appears that Defendant "Jeffrey Satil, Esq. (Doe Attorney 3)" ("Satil"), as well Defendants "Doe Attorney 1" and "Doe Attorney 2" represented Itah in Plaintiff's Housing Court proceeding. Defendant Phyllis Saxe, the Housing Court judge who presided over the proceeding, ruled that Plaintiff "had no 'possessory interest' in the property . . . ." (*Id.* ¶ 87.) Judge Saxe later "refused to entertain" Plaintiff's motion to reargue and renew. (*Id.* ¶ 92.) Plaintiff asserts that Judge Saxe discriminated against him because of his race. He also asserts that Judge Saxe conspired with "Doe Attorney 1," "Doe Attorney 2," and Satil to violate his civil rights. He further asserts that Judge Saxe failed to address any of Itah's alleged criminal acts.

## DISCUSSION

### A.    DHCR

The Court must dismiss Plaintiff's claims under 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986 against DHCR under the doctrine of Eleventh Amendment immunity. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, second alteration in original). This immunity shields states from claims for monetary damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states

themselves to state agents and state instrumentalities that are, effectively, arms of a state."

*Gollomp*, 568 F.3d at 366 (internal quotation marks and citation omitted). DHCR is an arm of the

State of New York for Eleventh Amendment purposes. *See Skibinski v. Lazaroff*, 173 F.3d 846

(2d Cir. 1999) (unpublished opinion); *Morring v. Cuomo*, No. 13-CV-2279 (DLC), 2013 WL

4004933, at *1 (S.D.N.Y. Aug. 5, 2013).

Congress has not abrogated the States' immunity as to claims under §§ 1981, 1982, 1983,

1985, and 1986. *See Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (§ 1983);

*Jones v. Nat'l Comm'cn & Surveillance Networks*, 409 F. Supp. 2d 456, 467 (S.D.N.Y. 2006)

("Sections 1981 to 1986 of Title 42 . . . do not constitute a congressional waiver of state

immunity."), *aff'd*, 266 F. App'x 31 (2d Cir. 2008) (summary order). And the State of New York

has not waived its immunity to suit in federal court. *See Trotman v. Palisades Interstate Park*

*Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The Court therefore dismisses Plaintiff's claims under

§§ 1981, 1982, 1983, 1985, and 1986 against DHCR under the doctrine of Eleventh Amendment

immunity and because these claims are frivolous and seek monetary damages from a defendant

that is immune from that relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *Montero v. Travis*, 171

F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that

the defendants are immune from suit.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989))).

## B.    Judicial immunity

Judges are absolutely immune from suit for damages with respect to claims under 42

U.S.C. §§ 1981, 1982, 1983, 1985, and 1986 for any actions taken within the scope of their

judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (§ 1983); *Applewhite v.*

*Briber*, 506 F.3d 181, 181-82 (2d Cir. 2007) (applying judicial immunity doctrine to § 1981

claims); *Turner v. Boyle*, 116 F. Supp. 3d 58, 82 (D. Conn. 2015) ("[A]bsolute immunity extends

to all civil suits, including suits brought under Section 1983 and [S]ection 1985."); *Muhammad*

*v. Bethel-Muhammad*, No. 11-CV-0690, 2013 WL 5531395, at *3 (N.D. Ala. Oct. 7, 2013)

("Section 1982 does not abrogate judicial immunity."); *Leogrande v. New York*, No. 08-CV-

3088, 2013 WL 1283392, at *11-12 (E.D.N.Y. Mar. 29, 2013) (applying judicial immunity to,

among other claims, § 1986 claims). Generally, "acts arising out of, or related to, individual

cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d

Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at

209. This is because "[w]ithout insulation from liability, judges would be subject to harassment

and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, as amended in

1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission

taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory

decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action outside her judicial capacity,

or when a judge takes action that, although judicial in nature, is taken "in the complete absence

of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven,* 579 F.3d at 209-10 (describing

actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed

broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356

(1978). Courts have specifically applied this immunity to Housing Court judges. *See Morris v.

New York City*, No. 14-CV-1749, 2014 WL 1757514, at *6 (E.D.N.Y. May 1, 2014); *Hecker v.

Martino*, 640 F. Supp. 2d 343, 344 (S.D.N.Y. 2009); *DiPasquale v. Milin*, 303 F. Supp. 2d 430,

431-32 (S.D.N.Y. 2004); *Weissbrod v. Housing Part of the Civil Court of the City of New York*,

293 F. Supp. 2d 349, 354-55 (S.D.N.Y. 2003).

It is clear that Judge Saxe was well within her authority to determine that Plaintiff has no

possessory interest in the property. Judge Saxe is thus immune from suit with respect to

Plaintiff's §§ 1981, 1982, 1983, 1985, and 1986 claims against her. The Court therefore

dismisses those claims under the doctrine of judicial immunity and because they are frivolous

and seek monetary relief from a defendant who is immune from that relief. *See*

§ 1915(e)(2)(B)(i), (iii); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim

dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in*

*forma pauperis* statute]."); *Montero*, 171 F.3d at 760.[1]

**C.      *Rooker-Feldman* doctrine**

The Court must dismiss Plaintiff's claims requesting that the Court declare that Plaintiff

is the owner of the property, and requesting that the Court transfer the property's title to him,

because of the *Rooker-Feldman* doctrine. That doctrine – created by two United States Supreme

Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *District of Columbia*

*Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983) – precludes federal district courts

from reviewing final judgments of the state courts. *Exxon Mobil Corp. v. Saudi Basic Indus.*

*Corp.*, 544 U.S. 280, 284 (2005) (holding that federal district courts are barred from deciding

cases "brought by state-court losers complaining of injuries caused by state-court judgments

rendered before the district court proceedings commenced and inviting district court review and

rejection of those judgments."). The *Rooker-Feldman* doctrine applies where the federal-court

plaintiff: (1) lost in state court, (2) complains of injuries caused by the state-court judgment,

(3) invites the district court to review and reject the state-court judgment, and (4) commenced the

---

[1] The amendment to § 1983, allowing for injunctive relief against a judge only if a state-court declaratory decree was violated or state-court declaratory relief is unavailable, precludes Plaintiff from seeking injunctive relief against Judge Saxe. This is so because Plaintiff can always appeal Judge Saxe's ruling in the state appellate courts. *See, e.g.*, *Berlin v. Meijia*, No. 15-CV-5308, 2017 WL 4402457, at *4 (E.D.N.Y. Sept. 30, 2017), *appeal dismissed* No. 17-3589 (2d Cir. Apr. 18, 2018). Federal district courts do not supervise the state courts.

district court proceedings after the state-court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). Federal courts dismiss claims under the *Rooker-Feldman* doctrine for lack of subject matter jurisdiction. *See Exxon Mobil Corp.*, 544 U.S. at 291-92.

In asking this Court to declare that he is the owner of the property, and to transfer the property's title to him, Plaintiff asks this Court to overturn Judge Saxe's final judgment determining that he has no possessory interest in the property. The Court therefore dismisses those claims – and, therefore, his request for a temporary restraining order and a preliminary injunction – for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. *See* Fed. R. Civ. P. 12(h)(3).

## D.     Private prosecution

In his complaint, Plaintiff refers to federal criminal statutes and to 42 U.S.C. § 1987,[2] and asserts that at least some of the defendants and others have committed crimes. But a private citizen cannot prosecute a criminal action in federal court. *See Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981) (prisoners lack standing to seek the issuance of an arrest warrant); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). And because federal prosecutors possess

---

[2] Section 1987 states that:

[t]he United States attorneys, marshals, and deputy marshals, the United States magistrate judges appointed by the district and territorial courts, with power to arrest, imprison, or bail offenders, and every other officer who is especially empowered by the President, are authorized and required, at the expense of the United States, to institute prosecutions against all persons violating any of the provisions of section 1990 of this title or of sections 5506 to 5516 and 5518 to 5532 of the Revised Statutes, and to cause such persons to be arrested, and imprisoned or bailed, for trial before the court of the United States or the territorial court having cognizance of the offense.

discretionary authority to bring criminal actions, they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, the Court dismisses Plaintiff's claims in which he asserts federal criminal violations against the defendants and others for lack of standing.

### E.   "Doe Officer," "Doe Officer 1," and Former HPD Commissioner Been

Plaintiff seems to assert constitutional claims under 42 U.S.C. § 1983 against "Doe Officer," "Doe Officer 1," and former HPD Commissioner Been arising from their failure to enforce criminal and housing laws against Itah and his businesses. But there is no federal constitutional duty requiring government officials to enforce laws. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755-56 (2005); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994). Accordingly, the Court dismisses these § 1983 claims, arising from these defendants' alleged failure to enforce laws, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

### F.   NYPD, HPD, & the City of New York

The Court must dismiss Plaintiff's claims against NYPD and HPD. Because these defendants are agencies of the City of New York, they cannot be sued. *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (NYPD); *Garanin v. N.Y.C. Hous. Pres. & Dev.*, No. 15-CV-3169 (AJN), 2016 WL 1690301, at *5 (S.D.N.Y. Mar. 30, 2016) (HPD), *aff'd*, 673 F. App'x 122 (2d Cir. 2016), *cert. denied*, 138 S. Ct. 1004 (2018); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency.").

When a plaintiff sues a municipality, like the City of New York, under 42 U.S.C. § 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Plaintiff alleges no facts showing that a policy, custom, or practice of the City of New York caused a deprivation of his federally protected rights. The Court therefore dismisses Plaintiff's claims against NYPD and HPD, and his § 1983 claims against the City of New York, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

**G.      Section 1983 claims against Itah, 310 W 115 Street, LLC, "Doe Corporation," "Doe Attorney 1," "Doe Attorney 2," Satil, and "Doe Law Firm"**

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that a defendant acted under the color of a state "statute, ordinance, regulation, custom or usage . . . ." 42 U.S.C. § 1983. Private parties are therefore not generally liable under that statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d

Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties . . . .") (internal quotation marks and citation omitted). Absent special circumstances suggesting concerted action between an attorney and a state representative, *see Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), an attorney's representation of a party in a court proceeding does not constitute the degree of state involvement or interference necessary to establish a claim under § 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender, *see Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 324-25 (1981)); *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997); *Sam & Mary Hous. Corp. v. New York*, 632 F. Supp. 1448, 1452 (S.D.N.Y. 1986) ("participation in litigation alone is insufficient to establish state action" for § 1983 purposes).

Plaintiff apparently alleges that Itah, 310 W 115 Street, LLC, "Doe Corporation," "Doe Attorney 1," "Doe Attorney 2," Satil, and "Doe Law Firm" are all private entities, and that "Doe Attorney 1," "Doe Attorney 2," Satil, and "Doe Law Firm" represented Itah and his businesses in Housing Court. But he does not allege any facts showing why any of these private entities acted as a state actor for the purpose of § 1983 liability when they allegedly deprived Plaintiff of his federally protected rights. The Court therefore dismisses Plaintiff's § 1983 claims against these defendants for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

## H.    Conspiracy claims under 42 U.S.C. §§ 1983 and 1985(3), and related claims under 42 U.S.C. § 1986

Plaintiff asserts that some of the defendants conspired with other defendants, including state actors, to deprive him of his federal constitutional rights. A plaintiff asserting a conspiracy claim under 42 U.S.C. § 1983 must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional

injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). In order to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege facts that plausibly show that there exists: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to his person or property, or a deprivation of his right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [§ 1985(3)] conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id*. (internal quotation marks and citation omitted). Vague and unsupported assertions of a conspiracy claim, either under § 1983 or § 1985(3), will not suffice. *See, e.g., Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order); *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990).

42 U.S.C. § 1986 provides a remedy against individuals who "kn[ew] of and ha[d] the ability to aid in preventing a § 1985 conspiracy . . . [and] decline[d] to take steps preventing that conspiracy. . . ." *Wahad v. FBI*, 813 F. Supp. 224, 232 (S.D.N.Y. 1993); *see* § 1986. Claims under this section are only valid "if there is a viable conspiracy claim under § 1985." *Gagliardi*, 18 F.3d at 194.

To the extent that Plaintiff asserts conspiracy claims under either § 1983 or § 1985(3), the Court must dismiss those claims. Plaintiff's allegations concerning a conspiracy are vague and unsupported. The Court therefore dismisses those claims, and thus, Plaintiff's § 1986 claims, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

I.    **42 U.S.C. §§ 1981 and 1982**

The Court must also dismiss Plaintiff's claims asserted under 42 U.S.C. §§ 1981 and

1982. Under § 1981:

> [a]ll persons within the jurisdiction of the United States shall have the same right
> in every State and Territory to make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and proceedings for the
> security of persons and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes, licenses, and exactions of every
> kind, and to no other.

And under 42 U.S.C. § 1982: "All citizens of the United States shall have the same right, in

every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell,

hold, and convey real and personal property."

"To establish a claim under 42 U.S.C. § 1981, [a] plaintiff[] must allege facts supporting

the following elements: (1) [the] plaintiff[] [is a] member[] of a racial minority; (2) [the]

defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of

the statute's enumerated activities." *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 339 (2d Cir.

2000). The pleading standard for § 1982 claims is the same as the one for § 1981 claims, with the

exception that a plaintiff must allege facts showing discrimination concerning one or more of the

activities enumerated in § 1982. *See Holmes v. Caliber Home Loans, Inc.*, No. 16-CV-3344

(KMK), 2017 WL 3267766, at *10 (S.D.N.Y. July 21, 2017) (quoting *Puglisi v. Underhill Park

Taxpayer Ass'n*, 947 F. Supp. 673, 700 (S.D.N.Y. 1996), *aff'd*, 125 F.3d 844 (2d Cir. 1997)). A

plaintiff does not state a § 1981 claim in he "fail[s] to allege in other than conclusory fashion any

specific instances of discrimination . . . ." *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68

(2d Cir. 2015). The same is true with respect to a § 1982 claim. *See, e.g., Grimes v. Fremont

Gen. Corp.*, 785 F. Supp. 2d 269, 296 (S.D.N.Y. 2011) ("[A]llegations of discrimination,

unsupported by specific factual allegations, have been found insufficient to state a claim under §§ 1981 and 1982.") (collecting cases).

Plaintiff's allegations are insufficient to state a § 1981 or § 1982 claim. Plaintiff asserts that the defendants discriminated against him because of his race. But he does not allege facts showing how any of the defendants intentionally discriminated against him because of his race; his discrimination claims are merely unsupported accusations. The Court therefore dismisses Plaintiff's claims under §§ 1981 and 1982 for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). But the Court grants Plaintiff leave to replead these claims in an amended complaint. Plaintiff must allege facts in his amended complaint showing that (1) he is a member of a racial minority, (2) a defendant intended to discriminate against him because of his race, and (3) that the discrimination involved one of the activities enumerated in § 1981 or § 1982.[3]

**J.     State-law claims**

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having dismissed the claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over the state-law claims that Plaintiff is asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

---

[3] State actors cannot be sued under § 1981. *Duplan v. City of New York*, 888 F.3d 612, 619-21 (2d Cir. 2018).

**CONCLUSION**

The Clerk of Court is directed to assign this matter to my docket and mail a copy of this order to Plaintiff, noting service on the docket. The Court dismisses, under the *Rooker-Feldman* doctrine, Plaintiff's claims in which he seeks to overturn Judge Saxe's final judgment that Plaintiff has no possessory interest in the property located at 310 West 115th Street, New York, New York, for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). The Court therefore denies Plaintiff's request for a temporary restraining order and a preliminary injunction (ECF No. 3) for the same reason. The Court dismisses Plaintiff's claims in which he seeks the criminal prosecution of defendants or others for lack of standing. The Court dismisses the remainder of Plaintiff's claims because they are frivolous, fail to state a claim on which relief may be granted, and because they seek monetary damages from defendants that are immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i), (ii), (iii).

But the Court grants Plaintiff leave to replead his claims under 42 U.S.C. §§ 1981 and 1982 in an amended complaint to be filed under this docket number (18-CV-0524 (CM)) within thirty days of the date of this order. Any amended complaint that Plaintiff files will completely replace, not supplement, his original complaint. The amended complaint must cure the deficiencies that the Court has discussed above. If Plaintiff fails to file an amended complaint within the time allowed, the Court will enter a judgment dismissing this action for the reasons set forth above. The Court declines to invoke its supplemental jurisdiction for any state-law claims Plaintiff may be asserting. 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   July 17, 2018
         New York, New York

_____
COLLEEN McMAHON
Chief United States District Judge